1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   **MARIA AURORA RASCON,**              **CASE NO. 1:13-CV-1578 AWI JLT**

12            **Plaintiff**

13            **v.**                        **ORDER ON MOTION TO DISMISS**

14   **DIVERSIFIED MAINTENANCE**
     **SYSTEMS, a Florida limited liability**   (Doc. No. 11)
15   **company, and BEST BUY STORES, L.P.,**
     **a Virginia limited partnership,**
16
              **Defendants**
17

18

19           This is an employment discrimination/harassment case brought by Plaintiff Maria Rascon

20   ("Rascon") against Diversified Maintenance Systems, LLC ("DMS") and Best Buy Stores ("Best

21   Buy").  Best Buy removed this case from the Kern County Superior Court.  The operative

22   complaint is the First Amended Complaint ("FAC"), which was filed on November 12, 2013.

23   Rascon alleges six state law claims, including intentional infliction of emotional distress, negligent

24   infliction of emotional distress, and four California Government Code § 12900 et seq. (the Fair

25   Employment and Housing Act) ("FEHA") claims for sexual harassment, failure to prevent

26   harassment, gender discrimination, and retaliation.  DMS now moves to dismiss all claims alleged

27   against it.  For the reasons that follow, the motion will be granted in part and denied in part.

28

1

**FACTUAL BACKGROUND**

2
        From the Complaint, DMS provides maintenance and cleaning services to Best Buy as a

3
vendor.  Rascon was employed by DMS from July 15, 2012 to October 30, 2012.  Rascon was

4
employed by DMS as a maintenance worker and was assigned to a Best Buy located in

5
Bakersfield, California.  Rascon typically worked 15-20 hours per week, and her duties included

6
cleaning the men's and women's restrooms.  Best Buy policy prohibits other employees from

7
using the restrooms when the restrooms are being cleaned.

8
        On July 30, 2012,[1] Rascon was cleaning the men's restroom of the Best Buy.  Despite a

9
sign on the door indicating that cleaning was in progress, a Best Buy employee named Rick

10
barged in and started using the restroom facilities in full view of Rascon.  Rascon became

11
embarrassed and humiliated and quickly exited the restroom to wait for Rick to exit.

12
        On August 5, 2012, Rascon placed the "closed for cleaning" sign on the door to the men's

13
restroom and placed a large trashcan in front of the door.  However, Rick again entered the

14
restroom and entered a stall.  Rascon exited the restroom in near tears and was embarrassed and

15
humiliated.  Rick laughed as Rascon exited the restroom.

16
        On August 12, 2012, Rascon was cleaning the women's restroom.  Rascon placed the

17
"closed for cleaning" sign on the restroom door and placed a large trashcan in front of the door.

18
Rick entered the bathroom, and then entered a stall while muttering profanity at Rascon.  Rascon

19
exited the bathroom and waited for Rick to leave.

20
        On August 26, 2012, Rascon was cleaning the women's restroom.  Rascon again placed

21
the cleaning sign on the door and moved a trashcan in front of the door.  Rick entered the restroom

22
with a smirk on his face.  Rick made comments that Rascon did not understand, entered a stall,

23
and began to urinate.  Rascon quickly exited the restroom and waited for Rick to exit.

24
        On September 2, 2012, Rascon was cleaning the men's restroom.  Rascon placed the

25
cleaning sign on the door and moved a large trashcan in front of the door.  Rick entered the

26
restroom and began to use the urinal.  Rascon left the restroom feeling embarrassed and offended.

27

28
[1] The FAC actually alleges a date of September 30, 2012.  See FAC at ¶ 10.  However, given the total chronology of events as alleged in the FAC, it is clear  the September 30 date is erroneous.  For purposes of this motion, the Court will read the September 30 allegation as meaning July 30.

Case 1:13-cv-01578-JLT   Document 18   Filed 04/17/14   Page 3 of 19

1    On October 10, 2012, Rascon was cleaning the men's restroom.  Rascon placed the

2  cleaning sign on the door and moved a large trashcan in front of the door.  Rick pushed the

3  trashcan aside and cursed.  Rick entered the restroom, unfastened his pants, and dropped his pants,

4  thereby exposing his penis to Rascon.  With his penis exposed, Rick walked to a urinal and began

5  to urinate.  Rascon was mortified, scared, embarrassed, and flustered.  Rascon immediately

6  averted her eyes, began to cry, and exited the restroom.  Later that day, Rascon advised her DMS

7  supervisor, Samuel Rodriguez, of what occurred that day and of the prior incidents with Rick.

8  Rodriguez indicated that he would discuss the situation and Rascon's complaints with Best Buy,

9  as well as Rick.  Soon thereafter, Rodriguez told Rascon that Rick had been suspended and that

10  Rascon would not see him again.  Rascon took the next 7 days off in order to recover from the

11  events of October 10.

12    On October 17, 2012, Rascon returned to work at the Best Buy.  Rascon saw Rick in the

13  store, and immediately called Rodriguez to inquire about the situation.  Rodriguez responded that

14  he would follow-up and find out what happened.  Rascon continued on her regular routine at the

15  store as best she could.  As Rascon was in the process of returning her tools and supplies to the

16  proper place in a storage room, Rick entered the storage room.  In an agitated state of anger, Rick

17  made several aggressive movements directed at Rascon, including throwing a manual pallet jack

18  toward her in an apparent attempt to cause physical injury.  Rascon immediately left the storage

19  room and advised Best Buy supervisory personnel.

20    The Best Buy supervisors took Rascon into an office to discuss what had just occurred.

21  One of the supervisors described himself as the Vice President of that store, and a second manager

22  translated between English and Spanish for Rascon and the Vice President.  The second manager

23  advised Rascon that Rick had not been suspended because they were not previously advised of the

24  situation.  The two supervisors also advised that no investigation could be initiated without Rascon

25  signing a complaint form.  Rascon decided to take the paperwork home to review and complete.

26  Rascon also informed Rodriguez that she required several days off to recover from the events of

27  October 17.

28    On October 23, 2012, Rascon contacted DMS's Human Resources Manager, Gladys

1  Garcia.  Rascon asked to be transferred to a different location so that she would not be required to

2  work at the Bakersfield Best Buy store.  Rascon feared that she would encounter Rick again and

3  that Rick would be more aggressive because of Rascon's complaints.  Garcia informed Rascon

4  that DMS would accommodate Rascon's request as best they could.

5  On October 30, 2012, Garcia telephoned Rascon.  Garcia informed Rascon that Best Buy

6  had conducted an investigation, had reviewed videotapes of the incidents, and determined that

7  Rascon's complaint was substantiated.  As a result, Best Buy had terminated Rick.  Rascon again

8  explained that she did not want to return to the Bakersfield Best Buy because of the harassment

9  that she had endured and again asked to be transferred.  Garcia indicated that a transfer was not

10  possible, and told Rascon to either return to the Bakersfield Best Buy or be terminated.  Rascon

11  indicated that she could not return, so Garcia terminated Rascon.

12

13  **RULE 12(b)(6) FRAMEWORK**

14  Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

15  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

16  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

17  absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar,

18  646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121

19  (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

20  taken as true and construed in the light most favorable to the non-moving party.  Faulkner v. ADT

21  Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1122.  However,

22  complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

23  elements of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family

24  Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to

25  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

26  unreasonable inferences."  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n.4 (9th Cir.

27  2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To avoid a Rule

28  12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a

4

claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad, 709 F.3d at 761. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## DEFENDANT'S MOTION

1.    FEHA -- Administrative Procedures

*Defendant's Argument*

DMS argues that, despite the normal practice, Rascon did not attach a copy of her California Department of Fair Employment and Housing ("DFEH") complaint or a notice of case

1   closure.  Further, FEHA administrative exhaustion is jurisdictional.  The right to sue letter

2   submitted by Rascon shows that she filed a complaint against Diversified Maintenance Systems,

3   Inc., which is a Utah entity and is not DMS.  Thus, there has been no exhaustion as to DMS.

4   Dismissal of the FEHA claims should be without leave to amend because the one year limitations

5   period for filing a DFEH complaint ran in October 2013.

6          In reply, DMS argues that leave to amend should not be granted.  If Rascon's counsel had

7   done complete and proper research, she would have found DMS and could have filed a proper

8   DFEH complaint.  DMS should not be prejudiced because incomplete research was performed.

9   No case law permits equitable relief based on incomplete research.  Further, Rascon gives no

10  explanation about why she has not filed a DFEH complaint in the past two months as part of her

11  pursuit of equitable relief.  Such a failure to perfect requires the denial of equitable relief.

12         *Plaintiff's Opposition*

13         Rascon argues that she has exhausted all practical administrative remedies and DMS has

14  not been prejudiced.  As per *Grant v. Comp USA, Inc.*, 109 Cal.App.4th 637 (2003), a right to sue

15  letter is not a necessary pre-requisite to exhaustion of remedies.  In that case, where a plaintiff had

16  filed a DFEH complaint, the court of appeals ruled that a right to sue letter was not necessary.  The

17  alternative would have been to dismiss the case as time barred.  In this case, a DFEH complaint

18  was filed, but the wrong entity was named in the complaint.  DMS has suffered no prejudice due

19  to this because DMS had already been notified by Rascon several times of a potential sexual

20  harassment situation.  As alleged in the complaint, by choosing not to address Rascon's

21  complaints, DMS signaled its intention not to address Plaintiff's complaint.  As such, Rascon

22  chose to request an automatic right to sue letter from DFEH.  Thus, all practical administrative

23  remedies have been exhausted.

24         Alternatively, Rascon argues that she should be permitted to file a new DFEH complaint

25  because the statute of limitations has been tolled by operation of Government Code § 12960(d)(2),

26  which tolls the limitation period for no longer than one year following a rebutted presumption of

27  the identity of a person's employer.  Further, when exhaustion of administrative remedies is a

28  prerequisite to suit, the limitations period is tolled during the administrative proceeding.  If the

1    defendant is not prejudiced, the running of the statute of limitations is tolled.  Here, the last

2    unlawful practice was Rascon's termination on October 30, 2012, which means that the statute of

3    limitations would have normally run out on October 30, 2013.  However, Rascon filed her DFEH

4    complaint and received an automatic right to sue letter on August 16, 2013.  Thus, 295 days had

5    passed at the time of the DFEH filing.  This leaves 70 days remaining of the 1 year limitation

6    period.  Because limitations periods are tolled during the pendency of an administrative

7    proceeding, and there is no prejudice to DMS, Rascon should be permitted to refile her DFEH

8    complaint under the remaining 70 days.

9         *Legal Standard*

10        The FEHA affords California employees broad protection against discrimination,

11   harassment, and retaliation on any of a wide range of impermissible bases.  McDonald v. Antelope

12   Valley Community College Dist., 45 Cal.4th 88, 106 (2008).  However, a plaintiff "must exhaust

13   the FEHA administrative remedies before bringing suit on a cause of action under [FEHA] or

14   seeking the relief provided [by FEHA] . . . ."  Rojo v. Kliger, 52 Cal.3d 65, 88 (1990).   The

15   California Supreme Court has described FEHA's administrative requirements:

16        Employees who believe they have been discriminated against generally have one
          year in which to file an administrative complaint with the DFEH . . . .  The DFEH
17        is obligated to investigate each complaint and decide whether to file an accusation.
          If it has not filed an accusation within 150 days, it must offer the employee a right-
18        to-sue letter on request; if it has not filed an accusation within one year, it must
          issue the employee a right-to-sue letter as a matter of right.
19

20   McDonald, 45 Cal.4th at 106.  The administrative complaint must be in writing and verified, and

21   must "state the name and address of the person, employer, labor organization or employment

22   agency alleged to have committed the unlawful practice complained of . . . ."  Cal. Gov. Code §

23   12960(b); see also Cole v. Antelope Valley Union High Sch. Dist., 47 Cal.App.4th 1505, 1511

24   (1996).  Exhaustion of these procedures is a mandatory prerequisite to bringing a lawsuit, and a

25   plaintiff may not proceed in court without meeting the procedures.  McDonald, 45 Cal.4th at 106;

26   Romano v. Rockwell Int'l, Inc., 14 Cal.4th 479, 492 (1996).  Therefore, "in the absence of a

27   timely administrative complaint, any civil action alleging a violation of FEHA will be subject to

28   dismissal for failure to exhaust administrative remedies."  McCaskey v. California State Auto

1   Assn., 189 Cal.App.4th 947, 976 (2010).  However, there are equitable exceptions to the one year

2   limitations period.  E.g. McDonald, 45 Cal.4th at 108 (pursuit of internal administrative

3   procedures); Accardi v. Superior Ct., 17 Cal.4th 341, 349 (1993) (continuing violation doctrine).

4   Further, FEHA itself provides for tolling of the one year period under four circumstances,

5   including for "a period of time not to exceed one year following a rebutted presumption of the

6   identity of the person's employer under [Cal. Gov. Code] § 12928, in order to allow a person

7   allegedly aggrieved by an unlawful practice to make a substitute identification of the actual

8   employer."  Cal. Gov. Code § 12960(d)(2).

9        *Discussion*

10        The FAC alleges that a DFEH complaint was filed.[2]  However, it is undisputed that DMS

11   was not named in the DFEH complaint.  See Doc. No. 14 at 6:2-4.  Thus, there is no dispute that

12   Rascon did not file a DFEH administrative complaint against DMS.  The issue is whether Rascon

13   has adequately complied with the administrative procedures or whether the one year limitations

14   period has been tolled so that Rascon may now file a DFEH complaint against DMS.

15        In arguing that there has been sufficient compliance, Rascon relies on *Grant v. Comp USA*.

16   In *Grant*, the plaintiff filed a timely complaint with the DFEH on March 31, 1995, and received a

17   right to sue letter on April 11, 1995.  See Grant, 109 Cal.App.4th at 640.  In September 1995,

18   however, the DFEH reopened the plaintiff's case and rescinded the previous right to sue letter.

19   See id.  In March 1996, DFEH proposed a settlement, but the settlement was not accepted.  See id.

20   On April 11, 1996, the plaintiff filed a civil lawsuit.  See id.  The plaintiff eventually was awarded

21   nearly $3 million in the jury trial that followed.  See id.  On appeal, the defendant employer

22   argued that the plaintiff had failed to exhaust her administrative remedies because she never

23   obtained a second right to sue letter from DFEH.  See id.  The Court of Appeal held that there had

24   been adequate exhaustion because, under Government Code § 12965, the plaintiff had the right to

25   sue by operation of law since DFEH failed to resolve the matter within one year of the plaintiff's

26   administrative complaint.  See id.

27

28   [2] To the extent that DMS is arguing that a copy of the DFEH complaint should have been attached to the FAC, there is no such requirement in the Federal Rules of Civil Procedure.

The Court does not find *Grant* to be helpful.  *Grant* involved a timely administrative complaint that presumably named the correct employer-defendant, and a failure by DFEH to resolve the matter within the time specified by Government Code § 12965.  Rascon's case has neither of these key characteristics.  No administrative complaint against DMS has been filed with DFEH, and DFEH has not failed to resolve any complaint by Rascon against DMS.  Because there has been no administrative charge filed against DMS, *Grant* has no application to this case.

Rascon has cited no cases besides *Grant*.  The Court is aware of no authority that would excuse Rascon's failure to file a DFEH administrative complaint against DMS.  In the absence of a filed DFEH administrative complaint against DMS, Rascon may not pursue her four FEHA claims against DMS in this lawsuit.[3]  See McDonald, 45 Cal.4th at 106; Romano, 14 Cal.4th at 492; Rojo, 52 Cal.3d at 88; McCaskey, 189 Cal.App.4th at 976.  Dismissal of the FEHA claims is appropriate.  Whether dismissal will be with or without leave to amend depends upon the application of equitable tolling or § 12960(d)(2) to this case.

Rascon relies on *Elkins v. Derby*, 12 Cal.3d 410 (1974) with respect to equitable tolling.  In *Elkins*, prior to filing a lawsuit against her employer for personal injury, Elkins sought compensation through the workmen's compensation system.  See Elkins, 12 Cal.3d at 412.  The lower court held that the plaintiff's lawsuit was barred because, while the plaintiff was voluntarily pursuing a remedy through the workmen's compensation system, the applicable statute of limitations had run.  See id.  The California Supreme Court ultimately held that the lawsuit was not barred by the statute of limitations.  See id. at 420.  The *Elkins* court explained that it "has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding."  Id. at 414.  Further, "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is

---

[3] Rascon's argument that DMS has not suffered prejudice is not convincing.  First, Rascon cites no cases that hold an absence of prejudice excuses the requirement to file a DFEH administrative complaint.  Second, Rascon has not shown an absence of prejudice.  Rascon simply states that DMS's conduct shows that it had no intention of addressing Rascon's complaints.  However, DMS permitted Rascon to take time-off both times she complained about Rick, informed Rascon that they would try to accommodate her request to transfer, and informed her that Rick had been terminated.  See FAC ¶¶ 17, 20-22.  It is far from clear that DMS's conduct as a whole demonstrates the intention to ignore all of Rascon's complaints.  The FAC does not show the absence of prejudice to DMS.

1  not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person

2  has several legal remedies and, reasonably and in good faith, pursues one.'" Id.

3       The Court does not find that *Elkins* applies.  Consistent with *Elkins*, the California

4  Supreme Court has held that § 12960's one year limitation period can be equitably tolled "during

5  the period when an aggrieved party's claims are being addressed in an alternate forum."

6  McDonald, 45 Cal.4th at 110.  Here, unlike *Elkins*, there is no evidence that other avenues for

7  redress were available to Rascon, or that Rascon first sought to address her claims in a forum other

8  than DFEH, either internally or externally to DMS.  Cf. id. at 111 (pursuit of internal

9  administrative remedies); Elkins, 12 Cal.3d at 414 (pursuit of claims through external agency).

10  Without evidence that Rascon was pursuing alternate administrative or remedial procedures prior

11  to filing her DFEH complaint, including how many days were spent trying to exhaust such

12  remedies, Rascon has not shown that the equitable tolling described in *Elkins* applies in this case.

13       With respect to § 12960(d)(2), the California Supreme Court has described that particular

14  provision as providing "a one-year extension *in certain instances* of delayed discovery of the

15  identity of the actual employer."  McDonald, 45 Cal.4th at 106 (emphasis added).  Thus, Section

16  12960(d)(2) does not toll the § 12960(d) one year limitations period in all circumstances, but does

17  so once the presumption of Government Code § 12928 is rebutted.  See Cal. Gov. Code §

18  12960(d)(2); cf. id.  Government Code § 12928 creates a "rebuttable presumption" that a FEHA

19  plaintiff's "employer" includes "any person or entity identified as the employer on the employee's

20  Federal Form W-2 (Wage and Tax Statement)."  Cal. Gov. Code § 12928.  Section 12928 "defines

21  the minimal showing a FEHA plaintiff must make to create a rebuttable presumption that an entity

22  is his or her employer."  Nelson v. Fog City Diner, Inc., 2002 Cal. App. Unpub. LEXIS 9441, *26

23  (Oct. 9, 2002).[4]

24       Here, Rascon has submitted the declaration of her counsel's paralegal.  The declaration

25  describes the efforts made to ascertain Rascon's employer.  The paralegal declares that he utilized

26  Rascon's paystub, which identified "Diversified Maintenance Systems" as the employer.  See

27

28  _____
[4] The Court may cite to unpublished California state court cases as persuasive authority.  See Employers Ins. of
Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Altman v. HO Sports Co., 821 F.Supp.2d
1178, 1189 n.14 (E.D. Cal. 2011).

Doc. No. 14-1.  The paralegal then utilized the "business search" function of the California Secretary of State's website and found a match for "Diversified Maintenance Systems, Inc." with a primary address in Utah.  See id.  Attached as exhibits to the paralegal's declaration are copies of Rascon's paystub and a copy of the Secretary of State's "Business Entity Detail" webpage regarding "Diversified Maintenance Systems, Inc."  See id. at Exs. A, B.  Exhibit A is a copy of a paystub and a paycheck issued to Rascon.  Both the paystub and the paycheck list "Diversified Maintenance Systems" as the issuing entity, and both the paystub and the paycheck list an address of "5110 Eisenhower Blvd., Suite 250, Tampa, FL."  See id. at Ex. A.  Exhibit B describes an entity with the name "Diversified Maintenance Systems, Inc." and lists an address in Salt Lake City, Utah.  See id. at Ex. B.

The Court is not convinced that Rascon has adequately invoked § 12960(d)(2).  Assuming that the paystubs may be considered the equivalent of a W-2 Form, per § 12928, the presumption created by Rascon's paystubs is that "Diversified Maintenance Systems" of Tampa, Florida is Rascon's employer.  Cf. Cal. Gov. Code § 12928; Nelson, 2002 Cal. App. Unpub. LEXIS 9441 at *26 with Doc. No. 14-1 Ex. A.  There is not a presumption that "Diversified Maintenance Systems, Inc." of Salt Lake City, Utah is Rascon's employer.  Although counsel for Diversified Maintenance Systems, Inc. may have clarified that his client was not Rascon's "employer," his information was not actually contrary to Rascon's paystub.

It is true that Exhibit B identifies an entity with a similar name as DMS.  However, that is only part of the picture.  The California Secretary of State's website allows three different "search types" when conducting a "Business Search" for a business entity:  a search for "Corporation," a search for "Limited Liability Company/Limited Partnership," and a search for "Entity Number."  See http://kepler.sos.ca.gov.  When one selects the "Corporation" search type and types in "diversified maintenance systems," "Diversified Maintenance Systems, Inc." is listed as an active entity.  See id.  When one clicks on "Diversified Maintenance Systems, Inc.", one is directed to the identical "Business Entity Detail" webpage that is Exhibit B.  See id.  That is, one is directed to a webpage that shows a Salt Lake City, Utah address for "Diversified Maintenance Systems, Inc."  However, when one selects the "Limited Liability Company/Limited Partnership" search

11

1   type, and enters "diversified maintenance systems," two entities are listed: "Diversified Building

2   Maintenance & Management Systems, LLC" which has a suspended license, and "Diversified

3   Maintenance Systems, LLC" which has an active license. See id. When one clicks on

4   "Diversified Maintenance Systems, LLC," one is directed to a Business Entity Details page that

5   lists an address of "5110 Eisenhower Blvd. Ste. 250, Tampa, FL." See id. In other words, by

6   utilizing the second type of search available, DMS and its Florida address that appears on

7   Rascon's paystubs is found. What Rascon is attempting to do is rely, not on a presumption created

8   by the paystub, but on an assumption followed by her counsel after conducting a partial search of

9   the California Secretary of State's website. The Court cannot conclude that § 12960(d)(2) applies.

10          Because the last discriminatory act allegedly committed by DMS occurred on October 30,

11   2012, Rascon had until October 30, 2013 to file a DFEH complaint. DMS filed this motion to

12   dismiss on December 9, 2013, and Rascon filed her opposition invoking § 12960(d)(2) on

13   December 30, 2013. Obviously, the one year limitations period had run before December 2013.

14   Additionally, the Court's docket and Rascon's opposition indicate that Rascon discovered that

15   DMS was her actual employer prior to October 30, 2013. Rascon represents that Diversified

16   Maintenance Systems, Inc.'s counsel contacted her counsel shortly after the August 2013

17   Complaint[5] was served on them. See Doc. No. 14 at 4:3-9. Rascon also filed a stipulation to file

18   an amended complaint on October 30, 2013, in order to add DMS as a party. See Doc. No. 6. It is

19   apparent that prior to DMS filing the motion to dismiss, and prior to October 30, 2013, Rascon

20   was aware that DMS, and not Diversified Maintenance Systems, Inc., was her employer. Despite

21   this awareness, Rascon did not file an administrative complaint against DMS with DFEH.

22          In light of the above, the Court concludes that the one year limitations period for filing a

23   DFEH complaint against DMS has run. Rascon has not established that she is entitled to either the

24   tolling of § 12960(d)(2) or the tolling in Elkins. Because Rascon did not file a DFEH complaint

25   against DMS within the § 12960(d) one year limitations period, she may not proceed with her

26   FEHA claims against DMS in this Court. See McDonald, 45 Cal.4th at 106; Romano, 14 Cal.4th

27

28   [5] Rascon's complaint was filed in the Kern County Superior Court on August 19, 2013. See Doc. No. 2 at Ex. 1.

1    at 492; Rojo, 52 Cal.3d at 88; McCaskey, 189 Cal.App.4th at 976.  Dismissal of the four FEHA

2    claims against DMS will be without leave to amend.

3         2.    Negligent Infliction of Emotional Distress ("NIED")

4         *Defendant's Argument*

5         DMS argues that the NIED claim is barred by California's worker's compensation law.

6    Emotional distress claims that result from an employment relationship are barred under the

7    exclusivity provision of the workers' compensation law.  Negligent actions are covered acts, and

8    Rascon's claims all arose in the course and scope of her employment with DMS.[6]

9         *Plaintiff's Opposition*

10        Rascon argues that California cases recognize that harassment and discrimination are not

11   normal incidents of employment, and claims based on such conduct are not preempted by the

12   workers' compensation law.  Here, the conduct of Rick constitutes harassment and discrimination.

13   Thus, the NIED claim is not preempted.

14        *Legal Standard*

15        NIED is not an independent tort, rather it is the tort of negligence to which the traditional

16   elements of duty, breach of duty, causation, and damages apply.  Burgess v. Superior Ct., 2

17   Cal.4th 1064, 107 (1992); Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583,

18   588 (1989).  However, the emotional distress suffered by an NIED plaintiff must be "serious."

19   Burgess, 2 Cal.4th at 1073 n.6.  For NIED claims in which a plaintiff is a "direct victim," the

20   defendant must owe a duty to the plaintiff "that is assumed by the defendant or imposed on the

21   defendant as a matter of law, or that arises out of a relationship between the two."  Burgess, 2

22   Cal.4th at 1073; Marlene F., 48 Cal.3d at 590.

23        In the employment context, injuries sustained and arising out of the course of employment

24   are generally subject to the exclusivity provisions of the California workers' compensation law.

25

26   [6] Citing *Phillips v. Gemini Moving Specialists*, 63 Cal.App.4th 563 (1998), DMS also argues that if Rascon's FEHA
     claims fail, her emotional distress claims also fail.  *Phillips* held that the emotional distress cause of action was
27   preempted by the workers' compensation law, but that the plaintiff could seek to recover emotional distress damages
     as part of his wrongful discharge in violation of public policy claim.  See id. at 576-77.  Here, because there is no
28   claim for wrongful termination in violation of public policy, citation to *Phillips* amounts to little more than a
     reiteration of the argument that Rascon's NIED claim is preempted by the workers' compensation law.

1    <u>Mueller v. County of Los Angeles</u>, 176 Cal.App.4th 809, 823 (2009); <u>see also</u> <u>Cole v. Fair Oaks</u>

2    <u>Protection Dist.</u>, 43 Cal.3d 148, 160 (1987).   Generally, "injuries caused by employer negligence

3    or without employer fault," and "injuries caused by ordinary employer conduct that intentionally,

4    knowingly or recklessly harms an employee," are preempted by the workers' compensation

5    exclusivity provision.  <u>Fermino v. Fedco, Inc.</u>, 7 Cal.4th 701, 714 (1994).   Therefore, claims for

6    IIED and NIED generally are preempted by the workers' compensation law.  <u>Livitsanos v.</u>

7    <u>Superior Ct.</u>, 2 Cal.4th 744, 747 (1992).   However, "conduct that 'contravenes fundamental public

8    policy' [and] conduct that 'exceeds the risks inherent in the employment relationship,'" are

9    exceptions to the workers' compensation exclusivity provisions.  <u>Miklosy v. Regents of Univ. of</u>

10    <u>Cal.</u>, 44 Cal.4th 876, 902 (2008).   Gender or race based harassment and discrimination are actions

11    that exceed the risks inherent in the employment relationship.  <u>See</u> <u>City of Moorpark v. Superior</u>

12    <u>Ct.</u>, 18 Cal.4th 1143, 1155 (1998); <u>Murray v. Oceanside Unified School Dist.</u>, 79 Cal.App.4th

13    1338 (2000); <u>Fretland v. County of Humboldt</u>, 69 Cal.App.4th 1478, 1492 (1999).

14         *<u>Discussion</u>*

15         The basis for this cause of action is unclear.  Rascon's opposition focuses on Rick's

16    conduct, but the FAC alleges that defendants breached a statutory duty to take all reasonable steps

17    necessary to prevent discrimination and harassment.  <u>See</u> FAC ¶ 61.[7]

18         Reliance on Rick's conduct is problematic.  Rick is alleged to be a Best Buy employee, not

19    a DMS employee.  <u>See</u> FAC ¶ 10.  There is nothing to suggest that Rick was an agent of DMS.

20    Although Rascon clearly discusses Rick's conduct in her opposition, she does not explain how

21    DMS could be vicariously liable for an NIED claim based on Rick's behavior.  Moreover, Rick's

22    actions as described in the FAC appear to be intentional acts.  As intentional acts, Rick's acts are

23    not negligent and cannot form the basis of an NIED claim.  <u>See</u> <u>Tu v. UCSD Med. Ctr.</u>, 201

24    F.Supp.2d 1126, 1131 (S.D. Cal. 2002); <u>Edwards v. United States Fid. & Guar. Co.</u>, 848 F.Supp.

25

26    ---
[7] The NIED claim incorporates all prior paragraphs, which would include DMS's termination of and refusal to transfer Rascon. However, those are intentional acts. As intentional acts, they cannot form the basis of an NIED claim.  <u>See</u>

27    <u>Tu v. UCSD Med. Ctr.</u>, 201 F.Supp.2d 1126, 1131 (S.D. Cal. 2002); <u>Edwards v. United States Fid. & Guar. Co.</u>, 848 F.Supp. 1460, 1466 (N.D. Cal. 1994).  Nevertheless, the failure to investigate/contact Best Buy can reasonably be

28    inferred at this point as a negligent act.  <u>See</u> Footnote 8 *infra*.

1460, 1466 (N.D. Cal. 1994).

With respect to the failure to prevent harassment, the Court reads the FAC as alleging that DMS did not investigate or contact Best Buy regarding Rascon's first complaint about Rick.[8]  As Rascon's employer, DMS was under a statutory duty to prevent harassment by employees and non-employees against Rascon.  See Cal. Civ. Code §§ 12940(j)(1), (k).  Courts have found that NIED claims based on sexual harassment or failure to prevent sexual harassment are not preempted by the workers' compensation law.  See Evans v. Hard Rock Cafe Int'l (USA), Inc., 2007 U.S. Dist. LEXIS 70432, *8-*11 (E.D. Cal. Sept. 24, 2007); Hong v. Right Mgmt. Consultants, Inc., 2006 U.S. Dist. LEXIS 15252, *47-*49 (N.D. Cal. Feb. 14, 2006); Garcia v. Brick Container Corp., 2005 Cal.App. Unpub. LEXIS 8494, *27-*28 (Sept. 20, 2005); Fretland, 69 Cal.App.4th at 1491-92.

Here, the FAC alleges regularly occurring and escalating instances of crude and bazaar behavior by Rick leading up to Rascon's complaint to DMS, including his use of the women's restroom and exposing his genitals.  The FAC further alleges that Best Buy management told Rascon that they had not in fact been informed of Rick's conduct, despite what DMS management had told Rascon.  In other words, the FAC demonstrates a complaint about sexual harassment and DMS's failure to act on that complaint.  Given the nature of the negligence and the nature of Rascon's complaints and Rick's conduct, the Court cannot hold that Rascon's NIED claim is preempted by the workers' compensations laws.  See Evans, 2007 U.S. Dist. LEXIS 70432 at *8-*11; Hong, 2006 U.S. Dist. LEXIS 15252 at *47-*49; Garcia, 2005 Cal.App. Unpub. LEXIS 8494 at *27-*28; Fretland, 69 Cal.App.4th at 1491-92.  Dismissal of this claim is inappropriate.

3.    Intentional Infliction of Emotional Distress ("IIED")

*Defendant's Argument*

DMS argues that neither it nor any of its employees engaged in the alleged harassment.  Instead, the only allegedly wrongful acts attributed to DMS is a failure to prevent harassment and

[8] The FAC does not expressly allege that DMS did not contact Best Buy following Rascon's first complaint.  However, the FAC alleges that Best Buy personnel informed Rascon that Rick was not suspended because Best Buy had not been advised of the situation.  See FAC ¶ 19.  This supports a reasonable inference that DMS never contacted Best Buy or investigated Rascon's complaint about Rick.  See Johnson, 534 F.3d at 1122 (court is to draw any reasonable inferences from the well-pleaded factual allegations).

15

1   rejecting Rascon's request for a transfer, which resulted in a termination.  California recognizes

2   that routine personnel decisions cannot form the basis of an IIED claim.  DMS's conduct does not

3   as a matter of law demonstrate the kind of outrageous conduct necessary for an IIED claim.

4   *Plaintiff's Opposition*

5   Rascon argues that the FAC sets forth numerous examples of Rick's conduct towards her.

6   This includes undressing and exposing his genitalia, using bathroom stalls without closing the

7   door, and uttering lewd or profane comments.  The FAC also alleges that the Defendants' conduct

8   consisted of sexual, gender, physical, verbal, and visual harassment, which was outrageous.  The

9   FAC is plausible and provides Defendants adequate notice of the claims against them.

10   *Legal Standard*

11   The elements of the tort of IIED are:  (1) extreme and outrageous conduct by the

12   defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of

13   causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and

14   (4) actual and proximate causation of the emotional distress by the defendant's outrageous

15   conduct.  Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009); Potter v. Firestone Tire & Rubber Co., 6

16   Cal.4th 965, 1001 (1993).  "'Severe emotional distress' means emotional distress of such

17   substantial quality or enduring quality that no reasonable person in a civilized society should be

18   expected to endure it."  Hughes, 46 Cal.4th at 1051; Potter, 6 Cal.4th at 1004.  Conduct is

19   "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated

20   in a civilized community."  Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001.  Evidence that

21   reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is

22   insufficient.  Hughes, 46 Cal.4th at 1051.  In the employment context, "[m]anaging personnel is

23   not conduct beyond the bounds of human decency, but rather conduct essential to the welfare and

24   prosperity of society," and a "simple pleading of personnel management activity is insufficient to

25   support a claim of intentional infliction of emotional distress, even if improper motivation is

26   alleged."  Janken v. GM Hughes Electronics, 46 Cal.App.4th 55, 80 (1996).  It is for the court to

27   initially determine whether conduct may reasonably be regarded as sufficiently extreme and

28   outrageous to support an IIED claim.  Plotnik v. Meihaus, 208 Cal.App.4th 1590, 1614 (2012);

1   Godfrey v. Steinpress, 128 Cal.App.3d 154, 173 (1982).  If reasonable men could differ on the

2   issue, then a jury must determine whether the conduct is sufficiently extreme and outrageous.

3   Plotnik, 208 Cal.App.4th at 1614; Godfrey, 128 Cal.App.3d at 173.

4       *Discussion*

5       It is not clear which acts Rascon is relying on to hold DMS liable.  Rascon's opposition

6   focuses on the conduct of Rick, but the FAC incorporates all previous paragraphs, which would

7   include the termination, the failure to transfer, and a failure to prevent further harassment by Rick.

8   Again, although Rascon has not elaborated, the Court will view this latter act as based on a failure

9   by DMS to investigate/contact Best Buy after Rascon first complained about Rick.  See FAC ¶ 19.

10      With respect to Rick's conduct, Rick is alleged to be a Best Buy employee, not a DMS

11  employee.  See FAC ¶ 10.  Rascon does not explain how DMS could be vicariously liable for

12  Rick's conduct for purposes of pursuing an IIED claim.

13      With respect to acts by DMS identified in the FAC, none of those acts are sufficiently

14  "outrageous" to support an IIED claim.  Terminations and job assignments, which would be akin

15  to transfers, are generally considered normal personnel management decisions, and will not form

16  the basis of an IIED claim, even if improperly motivated.  See Gonzales v. City of Martinez, 638

17  F.Supp.2d 1147, 1161-62 (N.D. Cal. 2009); Janken, 46 Cal.App.4th at 64-65, 80.  Moreover, the

18  FAC alleges that DMS gave Rascon time-off, and only terminated Rascon after she refused to

19  return to the Bakersfield Best Buy, even though Rick had been terminated.  Given these facts, the

20  termination and the failure to transfer are not "so extreme as to exceed all bounds of that usually

21  tolerated in a civilized community."  Hughes, 46 Cal.4th at 1050.  As for the failure to prevent

22  harassment by not investigating or contacting Best Buy, this conduct is in the nature of an

23  omission.  DMS listened to Rascon's complaint, but just did not investigate further or contact Best

24  Buy.  Also, courts have suggested that a human-resources-type of investigations is an aspect of

25  personnel management.  Cf. Brahmana v. Lembo, 2010 U.S. Dist. LEXIS 10072, *6 (N.D. Cal.

26  Jan. 15, 2010) ("Supervising, investigating, or disciplining an employee and setting the

27  professional tone in the office (or failure to do so) clearly fall within a normal part of the

28  employment relationship."); Fermino, 7 Cal.4th at 717 ("We agree that all reasonable attempts to

17

1  investigate employee theft . . . are a normal part of the employment relationship."). Given these

2  considerations, DMS's omission is deserving of no plaudits, but it is not "so extreme as to exceed

3  all bounds of that usually tolerated in a civilized community." Id.

4       In sum, Rascon has not explained how Rick's conduct can be attributed to DMS, and the

5  specific acts of DMS that are identified in the FAC have not been shown to be sufficiently

6  "outrageous" to support an IIED claim. Therefore, dismissal of this cause of action is appropriate.

7

8                                          **CONCLUSION**

9       DMS moves to dismiss all claims alleged against them. Dismissal of the FEHA claims is

10  appropriate because Rascon has never filed a DFEH complaint against DMS, and the one year

11  limitation period to file such a complaint has passed. Because there has been no explanation why

12  amendment would not be futile, dismissal of the FEHA claims will be without leave to amend.

13      Partial dismissal of the NIED is appropriate. The intentional acts of DMS in terminating

14  and refusing to transfer Rascon, and the intentional acts of Rick, cannot form the basis of a NIED

15  claim. Dismissal of any NIED claims based on these acts will be without leave to amend.

16  However, dismissal of the NIED claim based on DMS's failure to investigate or contact Best Buy,

17  i.e. failure to prevent harassment, is inappropriate because this claim is grounded in sexual

18  harassment and thus, is not preempted by the workers' compensation law.

19      Finally, dismissal of the IIED claim is appropriate because the conduct that is clearly

20  attributable to DMS is not sufficiently "outrageous." As for the conduct of Best Buy employee

21  Rick, Rascon has not explained how Rick's conduct can be attributed to DMS. Because it is not

22  clear to the Court at this time that amendment would be futile, dismissal of the IIED claim will be

23  with leave to amend.

24

25                                            **ORDER**

26      Accordingly, IT IS HEREBY ORDERED that:

27  1.   DMS's motion to dismiss the first four causes of action is GRANTED and these causes of

28       action against DMS are DISMISSED WITHOUT LEAVE TO AMEND;

18

2.  DMS's motion to dismiss the fifth cause of action for intentional infliction of emotional distress is GRANTED and that cause of action against DMS is DISMISSED WITH LEAVE TO AMEND;

3.  DMS's motion to dismiss the sixth cause of action for negligent infliction of emotional distress is GRANTED IN PART in that claims based on the conduct of Best Buy employee Rick, and claims based on DMS's termination, failure to transfer, and failure to prevent harassment are DISMISSED WITHOUT LEAVE TO AMEND;

4.  Plaintiff may file an amended complaint within twenty (20) days of service of this order; and

5.  If Plaintiff does not file an amended complaint, DMS may file an answer within twenty-seven (27) days of service of this order.

IT IS SO ORDERED.

Dated:   April 17, 2014                    _____

                                   SENIOR  DISTRICT  JUDGE